# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

DAVID LEE BRADFORD,                         §
                                            §
           *Petitioner*,                    §
                                            §
v.                                          §        CIVIL ACTION NO. H-07-0458
                                            §
NATHANIEL QUARTERMAN,                       §
                                            §
           *Respondent*.                    §

## MEMORANDUM OPINION AND ORDER

David Lee Bradford, a state inmate represented by counsel, seeks habeas relief under 28 U.S.C. § 2254 challenging his conviction for aggravated assault. Respondent filed a motion for summary judgment (Docket Entry No. 6), to which petitioner responded (Docket Entry No. 7).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS summary judgment and DISMISSES this case.

### *Procedural Background*

A jury found petitioner guilty of aggravated assault under cause number 973,083 in the 248th District Court of Harris County, Texas, and assessed punishment at ten years incarceration. The conviction was affirmed on appeal. *Bradford v. State*, No. 10-04-00173-CR (Tex. App. – Waco 2005, pet. ref'd) (not designated for publication). The Texas Court

of Criminal Appeals refused discretionary review. Petitioner did not seek state habeas relief.

Petitioner claims that trial counsel was ineffective in failing to interview and call eight alibi witnesses. Respondent argues that petitioner's claim fails as a matter of law.

### Statement of Facts

The state court of appeals set forth the following statement of facts in its opinion:

> Billy Peters, the complainant, testified that [petitioner] had been Billy's and Billy's wife's drug dealer for several years. He testified that on the night of the alleged offense he and his wife went to visit a friend at the friend's apartment complex. As the two approached the friend's apartment, [petitioner] recognized Billy and called out to him. Billy ran, but [petitioner] and his friends caught up with him, tripped him, and began to attack him. [Petitioner] held a gun to Billy's head, cocked the trigger, and then pistol-whipped Billy. [Petitioner] and his friends beat Billy severely with their hands and feet. Billy suffered fractured ribs, a punctured lung, multiple skull fractures, a ruptured spleen, and other injuries. Both Billy and his wife positively identified [petitioner] as the man who assaulted Billy.

> [Petitioner] testified at trial that he did not assault Billy and that he did not know Billy or his wife. [Petitioner]'s fiancee and his fiancee's mother testified that [petitioner] was at a party that day and never left the party. The friend that Billy and his wife went to visit on the night of the alleged offense testified that she witnessed part of the assault and that [petitioner] was not one of the men who assaulted Billy.

*Bradford*, at *1.

### The Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief

2

cannot be granted on legal issues adjudicated on the merits in state court unless the state court adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying

factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional

judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

At trial in the instant case, counsel called an eyewitness to Billy Peters's assault, who testified that petitioner was not among the individuals who assaulted Peters.  Counsel also called petitioner's girlfriend and her mother, who testified that petitioner had been at the party the evening of the offense.  Petitioner claims that trial counsel was ineffective in failing to interview and call eight other alibi witnesses who saw petitioner at the party.

In rejecting petitioner's claim, the state court of appeals held as follows:

> At the hearing on the motion for new trial, [petitioner] presented evidence that eight people who did not testify during his trial were available to testify and would have testified that they saw him at the party on the day that Billy was assaulted.  Trial counsel was aware of at least some of these witnesses.  [Petitioner] argues that it was unreasonable for his counsel not to

contact the witnesses and ascertain whether their testimony would aid the defense.  [Petitioner] also argues that it was unreasonable for his counsel to call only [petitioner]'s fiancee and her mother to the stand, rather than witnesses who did not have a personal relationship with him.  However, [petitioner]'s trial counsel testified during the hearing that he did not call all of the witnesses to the stand because their testimony would be repetitive and would reveal inconsistencies.   [Petitioner]'s fiancee, her mother, and [petitioner]'s brother all testified that the persons at the party were all family members, with the exception of one of [petitioner]'s brother's friends. [FTN. This friend did not testify at the hearing, but did sign an affidavit stating she was at the party and was willing to testify.]  Under these circumstances, we cannot say that trial counsel's decision not to call additional alibi witnesses cannot be considered sound trial strategy.

*Bradford*, at *1.[1]

A review of the hearing record on the motion for new trial supports the appellate court's findings.[2]  Patricia Young, petitioner's neighbor, testified that she was in her garage between 7:30 and 9:30 the evening of the party, and that she saw petitioner "running around, playing with his kids" and did not see him leave.  R.R., pp. 18-19, Hearing on Motion for New Trial.  Young testified that she was willing and available to testify at petitioner's trial but was not contacted, and that she was not related to petitioner, did not consider him a close

---

[1]Petitioner contends that the state appellate court did not address his claim that counsel failed to interview all eight of the alibi witnesses.  In its opinion, however, the appellate court noted that, "Bradford argues that it was unreasonable for his counsel not to contact the witnesses and ascertain whether their testimony would aid the defense." *Bradford*, at *1.  By affirming the conviction, the state court of appeals impliedly rejected petitioner's claim that counsel was ineffective in failing to investigate or interview all eight of the alibi witnesses.

[2]One exception is noted: the state court of appeals found that,"Trial counsel was aware of at least some of these [eight witnesses]." *Id*.  This Court's review of the record shows that counsel was aware of all eight witnesses.  The distinction, however, has no effect on the outcome of this case.

friend, and had no felony or misdemeanor convictions. *Id*., p. 20. On cross-examination, she testified that she did not attend the party because she had company and was watching her daughter ride her bicycle. She agreed that cars and people had been coming and going during the party. *Id*., pp. 23-24.

Ykeshia Davis, a cousin of petitioner's girlfriend, testified that she arrived sometime between 7:30 and 8:30 the evening of the party and stayed about two hours. *Id*., pp. 25-26. She admitted that petitioner was "coming and going" from the house and garage throughout her stay, and that she did not "watch him every moment" she was there. *Id*., p. 26. Davis testified she was willing and available to testify at trial, but was not contacted. She admitted to having a felony forgery conviction. *Id*., p. 27.

Renette Sampson, petitioner's sister, testified that she arrived at the party at 8:00 that evening and stayed at petitioner's house until 3:00 a.m. or 4:00 a.m. the next morning. *Id*., p. 48. She stated that petitioner "ain't ever left the house." *Id*., p. 49. On cross-examination, Sampson testified that petitioner was in the kitchen cooking fish for "I guess an hour or two. I don't know. I don't know. I was in the garage, but he was in the kitchen cooking, you know, backwards and forwards, walking through the house." In answer to questions regarding petitioner's whereabouts at specific times, Sampson stated, "I ain't pay attention to that" and "I don't pay attention to the time." *Id*., p. 55.

Sherron Bradford, petitioner's sister, testified that she arrived at the party at 3:30 or 4:00 p.m. that afternoon, and spent the night at the house. *Id*., pp. 56-57, 60. She stated that

7

petitioner cooked food for three or four hours and did not leave the party. *Id*., pp. 57.
Bradford further testified that she had been available and willing to testify at trial, but was
not called. *Id*. Testimony of the remaining four witnesses was presented by affidavit by
agreement of the parties. *Id*., p. 67. The witnesses executed a joint affidavit, attesting that
they each were at the party and that petitioner was there the entire time. They further stated
that they were willing to testify at trial but were not called. Clerk's Record at 127.

At the hearing, trial counsel testified that the most important witness for the defense
had been the eyewitness to the assault itself, who testified at trial that petitioner was not
present at the assault. *Id.*, p. 72. The following relevant exchanges occurred between trial
counsel and the State regarding the uncalled alibi witnesses:

Q. What about the alibi witnesses? You called some in the trial; is that right?

A. I called a couple.

Q. Who did you call?

A. Called the girlfriend and the mother-in-law.

Q. And why did you decide to call them?

A. Because I thought that they could testify to the alibi well enough without
being unnecessarily either duplicative and also raising the possibility of
internal conflict between – with multiple witnesses.

Q. Did you know of other witnesses that could testify to similar things?

A. I knew of other witnesses, but the – there were just certain risks of calling
them. To testify to other things? I thought that those witnesses pretty much
covered the alibi well enough.

8

*Id.*, p. 76.  Under cross-examination, trial counsel agreed to the importance of having alibi witnesses who are not family members and who do not have criminal records, *id.*, p. 84, but noted that "putting witnesses on as a matter of internal conflict between witnesses" also was a concern.  *Id.*, p. 86.  Counsel testified that he and petitioner discussed all of the alibi witnesses, but admitted that he did not talk to each one individually because, "If I've got a good idea of what their testimony is likely to be, then that might be a reason for not talking – talking to some but not all."  *Id.*, p. 85.  Following argument from both sides, the trial court held that, "Based on watching the trial and listening to the testimony of these witnesses and listening to all the evidence that's presented in this case, I do not find that [trial counsel] was ineffective in representing [petitioner] and I deny the Motion for New Trial."  *Id.*, p. 93.

Petitioner argues that under *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91.  He contends that counsel's trial strategy not to call the other eight witnesses was unreasonable because counsel did not interview all of them and his investigation was "less than complete."

Under Fifth Circuit precedent, trial counsel must undertake a reasonable amount of pretrial investigation, and, at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case.  *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994).  If an investigation is incomplete, a court should weigh that

9

incompleteness only to the extent that reasonable professional judgments support the limitations on the investigation because counsel has a duty to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 690-91. A court's focus in determining the deference to be given counsel's strategic judgments in failure to investigate claims is whether the investigation supporting counsel's decision was itself reasonable. *Wiggins v. Smith,* 539 U.S. 510, 523 (2003).

To the extent petitioner complains here that counsel unreasonably failed to interview personally all eight alibi witnesses, counsel gave his reasons for his decisions. He explained that petitioner had informed him that the other eight individuals had been at the party and could testify to his presence at the party. He and petitioner discussed "each witness, who they were, and what they would testify to[.]" R.R., p. 85, Hearing on Motion for New Trial. Counsel personally spoke with some, but not all, of the eight individuals. *Id*. Counsel was aware of the repetitive nature of the proposed witness's testimony, the conflicts between or among their testimony, that all but one of the witnesses were family members, and that one or two of the witnesses had criminal records. Counsel testified at the hearing that in his professional opinion, the two alibi witnesses and the eyewitness who testified at trial adequately presented the alibi defense. Thus, to the extent counsel's decision not to interview all eight of the witnesses constitutes an incomplete investigation, his decision was an exercise of reasonable professional judgment based on his reasonable investigation of the facts of the case.

10

Counsel further made the strategic decision that the testimony of the other eight witnesses would have been repetitive, would not have added much to the testimony of the eyewitness and two alibi witnesses, and might, in fact, have harmed the defense. Counsel's decision regarding the cumulative nature of eight additional witnesses has support in the law. *See United States v. Harris*, 408 F.3d 186, 191 (5th Cir. 2005) ("This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel."). This is not a case of counsel completely failing to investigate or interview defense witnesses. *See Harrison v. Quarterman*, 496 F.3d 419, 2007 WL 2306918 (5th Cir. 2007). Decisions regarding the relative risks and benefits of presenting certain witnesses is a matter of professional judgment. *Strickland*.

It bears repeating that the test for federal habeas purposes is not whether the petitioner made the showing required under *Strickland*, but rather, whether the state court's determination rejecting his *Strickland* claim was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law. *See Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004). That, in hindsight, a different trial strategy may or may not have met with greater success, is not the proper inquiry for this Court.

The record does not support an argument that counsel wholly failed to investigate the uncalled witnesses; to the contrary, he was very much aware of the potential witnesses, their testimony, and the inherent risks of their testimony. The hearing record does not disclose any new evidence or potential testimony of which counsel was unaware. Based on his

11

investigation and knowledge of these witnesses, counsel made a strategic decision on which witnesses might prove valuable to the defense at trial.  Neither petitioner nor the record demonstrates that his professional judgment was unreasonable, and no deficient performance is shown.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Petitioner fails to rebut the presumed correctness of the factual findings by clear and convincing evidence.  No grounds for habeas relief are shown, and respondent is entitled to summary judgment on the issue of ineffective assistance of counsel.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 6) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas on March 14, 2008.

_____
Gray H. Miller
United States District Judge